1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MIGUEL ZAMUDIO-OROZCO,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. CR-03-00097-JLQ
Ninth Cir. No. 03-30554

MEMORANDUM OPINION ON
SENTENCING  RECONSIDERATION
REMAND

This matter is before the court pursuant to the remand from the Ninth Circuit
Court of Appeals and its Memorandum opinion filed in that court on January 17,
2006 and in this court on February 13, 2006.  Attorney Nicholas Marchi has filed
a brief on behalf of the Defendant and Pamela J. Byerly, Assistant United States
Attorney, briefed on behalf of the Plaintiff. (Counsel for the Defendant is requested
to hereafter comply with both this court's Local Rules and those of the Ninth
Circuit which require type size  in briefs to be 14 points or larger).

In its Memorandum opinion (C.R. 46), the Circuit Court stated in part:

> Because  Zamudio-Orozco  was  sentenced  under  the  then  mandatory
> Sentencing Guidelines, and we cannot reliably determine from the record
> whether the sentence imposed would have been materially different had the
> district court known that the Guidelines were advisory, we remand to the
> sentencing court to answer that question and to proceed pursuant to *United
> States v. Ameline*, 409 F. 3d 1073, 1084-1085 (9th Cir. 2005 (en banc). . .

ORDER - 1

Despite these clear statements in the Circuit Court's Memorandum, the Defendant's Sentencing Memorandum On Remand (C.R. 52) makes the following statements:

> Page 1, line 20: "On January 17, 2006 this matter was remanded by the Ninth Circuit for **re-sentencing.** This court issued an Order dated February 9, 2006 requesting that the parties address the issue of **re-sentencing.**" (Emphasis supplied).

> Page 2, line 11: "On January 17, 2006, the Ninth Circuit remanded this matter for **re-sentencing. There is no mention in the decision what procedure this Court was to use in addressing sentencing. . . As noted there is nothing in the Order on remand instructing the Court to follow the procedure stated in <u>Ameline</u>.**" (Emphasis supplied).

The foregoing statements are contrary to the specific language and ruling of the Ninth Circuit Court of Appeals, quoted above, including that court's specific statement that it was remanding "pursuant to *United States v. Ameline* 409 F. 3d 1073, 1084-85 (9th Cir. 2005) (en banc)." In addition, this court's February 9, 2006 Order (C. R. 44) specifically and clearly stated in part as follows:

> This matter has been remanded by the Ninth Circuit Court of Appeals "to proceed pursuant to *United States v. Ameline*, 409 F. 3d 1073, 1084 (9th Cir. 2005) (en banc). The instructions in Ameline are that the sentencing court is to "determine from the record whether the sentence imposed would have been materially different had the district court known that the Guidelines were advisory . . ."

This court in its February 9, 2006 Order then directed that briefs on the remanded question were to be filed and stated:

> "The court will then review the briefs and record and if the answer to the remanded question is in the affirmative a new sentencing date shall be set. If the answer to the remanded question is in the negative, the court will so order.

Therefore, the court will proceed as directed by the Ninth Circuit Court of Appeals and this court's February 9, 2006 Order to determine if the Defendant's sentence would have been materially different under an advisory Guideline format.

In the Defendant's Sentencing Memorandum concerning the Sentencing Guidelines 16 level Offense Level enhancement by reason of a prior drug conviction, it is contended that the Defendant's 1988 delivery of cocaine conviction

ORDER - 2

1  and 72 months sentence "is not an aggravated felony as his conviction occurred
2  prior to the classification of aggravated felony in the INA. See <u>United States v.</u>
3  <u>Viramontes-Alvarado</u>, 149 F. 3d 912 (9th Cir. 1998), <u>United States v. Fuentes-</u>
4  <u>Barahona</u>, **147**(sic)F. 3d. 651(9th Cir.1997)." (The court's research reveals that the
5  correct citation for the <u>Fuentes-Barahona</u> case is **111** F. 3d 651).  At first blush the
6  cases cited by the Defendant would seem to support the position that the 1988 drug
7  conviction, imposed on October 27, 1988, prior to the November 18, 1988, adoption
8  of drug trafficking in the definition of "aggravated felony," could not be utilized as
9  a basis for the 16 level enhancement.

10      In its Sentencing Memorandum Regarding Remand (C.R. 54) the Government
11 has not responded to  this argument of the Defendant. The court has elected not to
12 treat this silence as a concession of the issue.  The court has done its own
13 independent research on what has turned out to be a somewhat complex issue and
14 has determined that since the Defendant's prior conviction was one for "drug
15 trafficking", rather than for a "crime of violence" the Defendant's argument must
16 be rejected.  In addition, as discussed *infra,* the alleged ambiguity in Guideline
17 2L1.2 found in the cases cited by the Defendant had, as of the date of the
18 Defendant's 2003 illegal entry offense which is the subject of this action, been
19 remedied by amendment of that Guideline in 1997.

20      In order to properly analyze the enhancement issue, a chronological review
21 of the underlying facts and dates is important.  That review reveals the following:

22      **October 27, 1988**–Defendant was sentenced to 72 months imprisonment in
23 Okanogan County, Washington Superior Court on charge of Delivery Of A
24 Controlled Substance (Cocaine).  The underlying facts indicate that the Defendant
25 had made past cocaine sales to undercover officers and was negotiating the sale of
26 from 2 to 5 kilograms of cocaine.

27

28 ORDER - 3

**November 18, 1988**-The Anti-Drug Abuse Act of 1988 (PL 100-690 § 7342) became effective which amended the reentry statute, 8 U.S.C. § 1326(b)(2), to increase the maximum possible penalty to 20 years for illegal reentry into the United States after deportation subsequent to "a conviction for the commission of an aggravated felony . . ."  This same legislation enacted 8 U.S.C. §1101(a)(43) to define "aggravated felony" as "murder, any drug trafficking crime" or illicit trafficking in firearms or destructive devices.  "Crimes of violence" were not at this time included in the definition of an "aggravated felony." PL 100-690 did not contain an effective date provision.

**November 29, 1990**-Congress passed the Immigration Act of 1990 (PL 101-649) which amended 8 U.S.C. § 1101(a)(43) to expand the definition of an "aggravated felony" to include any "crime of violence" for which the term of imprisonment was at least 5 years. Of critical import was the addition in the legislation of § 1101(b) which stated in part: "(b)EFFECTIVE DATE-The amendments made by subsection (a) shall apply to **offenses** committed on or after the date of the enactment of this Act . . ." (Emphasis supplied.)

**November 1, 1991**-United States Sentencing Guideline 2L1.2 was amended to provide  that the base Offense Level of 8 for illegally entering the United States after having been previously deported was to be increased 16 levels if the Defendant was deported after a conviction for a drug trafficking offense or crime of violence.

**November 1, 1997**-Guideline 2L1.2 Amendment 562 effective which amended Application Note 1 to state "'Aggravated felony' is defined at 8 U.S.C. § 1101(a)(43) **without regard to the date of conviction of the aggravated felony**.

**September, 2002**-Last deportation of the Defendant from the United States. The Defendant had previously been deported in 1992; 1993; August, 1995; December, 1995; and 1998.

ORDER - 4

**May 6, 2003**-Defendant was indicted for illegal reentry and arrested on June 30, 2003 in North Dakota, the offense now before this court.  Upon his return to Eastern Washington, pursuant to a Plea Agreement, the Defendant pled guilty and was sentenced on November 14, 2003. The court found the Sentencing Guideline range to be 77-96 months and imposed a sentence of 77 months followed by a term of Supervised Release.

The two Ninth Circuit cases cited by the Defendant, *Fuentes-Barahona*. decided in 1997, and *Viramontes-Alvarado*, decided in 1998 involved only the question as to which **offense**, the "crime of violence" constituting an "aggravated felony" or the illegal reentry, was referred to in the Effective Date language of PL 101-649, the November 29, 1990 amendment of the Immigration Act which added "crimes of violence" to the "aggravated felony" definition.  That statutory language provided in part that the amendments which added "crimes of violence" would apply only "to offenses committed on or after the date of the enactment of this Act . . ."  The Ninth Circuit, in the cases cited by the Defendant herein, found an ambiguity and applying the rule of lenity determined that the "offense" language of the Effective Date  provision referred to the "crime of violence" as opposed to the substantive offense of illegal reentry after deportation, 8 U.S.C. § 1326. The courts determined that the sentencing and Guideline enhancement only applied if the "crime of violence" occurred subsequent to November 29, 1990. The critical difference in this case is the "Effective Date" language of the 1990 statute concerning the date of commission of "crimes of violence."  There is no such 'Effective Date" language in the 1988 Anti-Drug Abuse Act of 1988 which defined an "aggravated felony" to include "drug trafficking crime." While the great majority of other Circuit Courts of Appeal have rejected these holdings, see *e.g. United States v. Lazo-Ortiz*, 136 F. 3d 1282 (11th Cir. 1998) and cases cited therein, that is of no moment to this court's analysis, *infra*.  In addition, this court

ORDER - 5

is clearly bound by the existing rulings of the Ninth Circuit.

While there is no further analysis by the Defendant or the Government where the "aggravated felony" is "drug trafficking" as opposed to a "crime of violence," it appears that the Defendant would argue that the same result should obtain where a drug crime is the predicate crime for the enhancement as for that with a "crime of violence" predicate. However, the controlling distinction is that the "drug crime" enhancement was included in the Anti-Drug Abuse Act of 1988 and that Act had no "Effective Date" provision or application date restrictive language as did that contained in the November 29, 1990 "crime of violence"amendments to the Immigration Act. The basis for the "Effective Date" rulings of the Ninth Circuit and the resolution as to which "offense" the Congress was referring to is set forth in the *en banc* decision of the Ninth Circuit Court of Appeals in *United States v. Gomez-Rodriguez*, 96 F. 3d 1262 (1996). Of greater import to the matter *sub judice*, is the reference therein to *United States v. Arzate-Nunez,* 18 F. 3d 730 (9th Cir. 1994), a case which is on "all fours" with the case now before this court.

In *Arzate-Nunez* the issue was the applicability of a 1985 drug trafficking conviction of that Defendant as an "aggravated felony" that would increase the maximum possible sentence and Guideline range in a 1992 illegal reentry case under 8 U.S.C. § 1326(b)(2). Arzate-Nunez argued that the application of the 1988 statutory "drug trafficking"amendments increasing the maximum sentence and the application of the 1991 Guidelines amendments would violate the *ex post facto* clause since his predicate drug offense took place prior to those amendments. The Ninth Circuit panel rejected Arzate-Nunez's claim holding that "His reentry is a new offense for due process purposes and also for ex post facto claims. Since Arzate-Nunez reentered the country after both 8 U.S.C. § 1101(a)(43) and U.S.S.G. 2L1.2 were in effect, the district court correctly

ORDER - 6

1    rejected his ex post facto claims." *Id.* @ 735.

2         The *Gomez-Rodriguez* en banc Opinion, 96 F.3d 1262, 1265, recognized

3    the efficacy and distinction of the *Arzate-Nunez* case stating:

4         The Government relies on our decision in *United States v. Arzate-Nunez*,
          18 F. 3d 730 (9th Cir. 1994) in contending that we may look to the
5         definition of "aggravated felony" as it existed on the date of reentry. That
          case is not applicable because it involved the 1988 version of section
6         1101(a)(43). The 1988 statute enacting that provision did not provide for
          an effective date, and we were, in that case, concerned only with the
7         application of the Ex Post Facto Clause.

8         The *en banc Gomez-Rodriguez* court therefore recognized the vitality of

9    the *Arzate-Nunez* determination that where the "aggravated felony" is a drug

10   trafficking offense, as herein, the fact that the drug offense took place prior to the

11   adoption of the statute and Guideline did not prevent the application of those

12   rules where the reentry offense  took  place subsequent to their adoption. In the

13   two Ninth Circuit cases cited by the Defendant, *Viramontes-Alvarago*, 149 F. 3d

14   912 (9th Cir. 1998) and *Fuentes-Barahona*, 111 F. 3d 651 (9th Cir. 1997) those

15   courts found that an ambiguity existed as to the date of  applicability of the

16   "aggravated felony" language in the Guidelines as to "crimes of violence."  This

17   ambiguity was removed by the November 1, 1997 Amendment 562 to Guideline

18   2L1.2.  That Amendment revised Application Note 1 (found in Application Note

19   3(A) of the 2006 Guidelines) to state " 'Aggravated felony' is defined in 8 U.S.C.

20   § 1101(a)(43) **without regard to the date of conviction of the aggravated**

21   **felony**." (Emphasis supplied). Since the Defendant's current illegal entry offense

22   was committed in 2002 or 2003 there is no *ex post facto* issue and also no

23   effective date issue as to this 1997 Amendment.

24        For the foregoing reasons, the Defendant's contention that the 16 level

25   enhancement pursuant to U.S.S.G. 2L1.2(b)(1)(A)(i) for the Defendant's 1988

26   drug trafficking felony does not apply must be and is rejected.

27        Based upon the foregoing and the Presentence Report, the court determined

28   ORDER - 7

that the Defendant's Offense Level was 24 and after a 3 level reduction for acceptance of responsibility and prompt entry of the plea of guilty, the final Offense Level was 21. The Defendant's extensive Criminal History is also set forth in the Presentence Report. Those offenses resulted in a calculation of 18 Criminal History points, placing the Defendant in the highest Criminal History Category of VI. Of import is the fact that only 13 Criminal History points place an individual in this highest category. The Defendant's Sentencing Memorandum On Remand also contends that the 16 level offense enhancement and the counting of the prior "aggravated felony" offense in the Criminal History calculation constitutes "double counting." That position must be rejected since at all relevant times the Application Notes to § 2L1.2 (now Note 6 in the 2006 Edition) provided:

> 6. <u>Computation of Criminal History Points</u>-A conviction taken into account under subsection (b)(1)is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History).

The resultant Sentencing Guideline Range was 77-96 months. The court imposed a 77 month period of incarceration.

Current counsel for the Defendant also contends that the Defendant was denied effective assistance of counsel because his former attorney has since been disbarred and that attorney did not raise the enhancement issue, discussed *supra,* at the time of the sentencing. However, the fact of disbarment does not in and of itself render past legal assistance "ineffective." To the contrary, the Defendant's Sentencing Memorandum (C.R. 25), filed by that attorney, was well done and presented all available issues except for the validity of the 16 level enhancement, rejected herein. The presentation by then counsel for the Defendant at sentencing was certainly well within the framework of "effective" advocacy.

The Defendant further argues that his sentence should have been below the

ORDER - 8

Guidelines due to his "cultural assimilation."  He also contends that he may be a United States citizen although that position has been rejected throughout his past immigration proceedings and his prior § 1326 prosecutions in this court in 1996 and in 2000 when he was sentenced to imprisonment for 51 months.  The Presentence Report does not reflect any ongoing or prior employment in a legal business, but in fact indicates that from 1988 when he was convicted in a multi-kilogram quantity cocaine conspiracy until 2003, shortly before his arrest, when he was found in an automobile with over $35,000, the Defendant has had an ongoing history of illegal drug activity, transportation, and sales including another cocaine delivery conviction in 1993.

The Defendant also suggests that there is a disparity in § 1326 sentences between this district where the Attorney General of the United States has not agreed to the utilization of the so-called "fast -track" program for aliens and the sentences imposed in those districts, including such adjacent districts as the Western District of Washington and the District of Idaho, where the fast-track programs are made available by the United States Department of Justice.  While this court is unable to discern any rational basis for the non-implementation of a fast-track program in this district, with a large number of § 1326 cases, but application in other districts having a relatively small number of such cases, in this specific case there is no showing that even if this district was part of the fast-track program that this Defendant would have been offered such a program or that he would qualify therefor.  In addition, with the prior record of this Defendant, such a program would not cause this court to sentence below the 77 months.

Pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005) this court is to consider the Guidelines along with the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence that is sufficient, but not greater than

ORDER - 9

necessary, to comply with the factors set forth in § 3553(a)(2).  Of particular importance in this case, *inter alia,* is the necessity to promote respect for the law, to deter future criminal conduct, and to protect the public from further crimes by the Defendant.

Considering the Guidelines in this case, the § 3553(a) factors, the Defendant's ongoing record of criminal behavior, the matters submitted by the attorneys for the Defendant, both at sentencing and in this remand procedure, and the matters contained in the Presentence Report, it is the judgment of this court that had this court known, at the time of sentencing, that the United States Sentencing Guidelines were advisory, as opposed to mandatory, the sentence imposed on this Defendant would not have been materially different from the 77 months imposed, which this court believes is a reasonable sentence.

The Clerk of this court shall enter this Memorandum  and forward copies to counsel and the Clerk of the United States Court of Appeals for the Ninth Circuit.

**DATED** this 2nd day of May, 2006.

<u>s/ Justin L. Quackenbush</u>

JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 10